UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**ALEXANDER R. SANNER,**

    **Plaintiff,**

  v.

**JIM HARRIS,**

    **Defendant.**

:

:

**Case No. 2:23-cv-1239**
**Chief Judge Sarah D. Morrison**
**Magistrate Judge Kimberly A. Jolson**

## OPINION AND ORDER

This matter is before the Court on the Motion for Summary Judgment filed by Jim Harris (Mot., ECF No. 54). Alexander Sanner responded (Resp., ECF No. 55) and Mr. Harris filed a Reply (Reply, ECF No. 57). This matter is now ripe for consideration.

For the reasons set forth below, the Motion is **GRANTED**.

**I.    BACKGROUND**

Mr. Harris is the President and Owner of Ziebart, a professional car care services provider that provides window tinting services. (Harris Aff., ¶ 3.) Mr. Sanner, who is biracial, was twice employed by Ziebart as a window tinter: from February to March 2017, and again from November 2020 until July 21, 2022. (*Id.* ¶¶ 5, 6.) Mr. Harris hired Mr. Sanner, awarded Mr. Sanner two raises, and terminated Mr. Sanner in July 2022.

Mr. Sanner's employment with Ziebart started off well. Although he was written up in April 2021 for arriving late to work (Mot., Ex. B), in May 2021, he was

awarded a $5 raise. (Sanner Dep., 42:2–6). The following month, he was awarded a $1,000 bonus. (*Id.* 43:19–21.) After this bonus, Mr. Sanner alleges that his relationships at work began to deteriorate. He asserts that he was discriminatorily scrutinized, harassed, and criticized by his managers, Craig and Tim, and that he had conflicts with another window tinter, Jason. (*Id.* at 45:6–46:20; 53:18–23.) Mr. Sanner also says that, between June and December 2021, his managers interfered with his paychecks and prevented him from earning the money he felt he deserved. (*Id.* 54:11–13.) However, he concedes that mistakes on his paychecks may have been accidental; when he brought the issue to management, they corrected the errors. (*Id.* 57:7–22.)

Despite these issues, in November 2021, he was given a second $5 raise, and management agreed that "everything was going good" with his employment. (*Id.* 44:21–24.)

Sometime around or after February 2022, tensions became so strained with Jason that Jason was transferred to another Ziebart location. (*Id.* 67:2–7.) The day after the transfer, Sanner was written up for being five minutes late to work. (*Id.* 67:9–12.)

In May 2022, Mr. Sanner was issued an Employee Warning Notice for throwing and breaking a window tinting tool. (Mot., Ex. C.) According to the Notice, Mr. Sanner created a "hostile work environment" by throwing the tool, even though he agreed to pay for a new tool. (*Id.*) Mr. Sanner says that this incident was caused by the stress of his poor relationship with his managers. (Sanner Dep., 77:18–20.)

2

Shortly after this incident, and about a month before he was fired, Mr. Sanner had an informal meeting with his managers, Tim and Andy. (*Id*. 69:1–70:4.) During the meeting, Mr. Sanner stated that he did not feel he was part of the Ziebart family, and that he was aware Tim did not like him. (*Id*. 69:13–70:4.) He also said that he did not like how he was scrutinized or the way his incorrect paychecks were handled. (*Id*. 80:22–81:5.) He does not claim that he made any statements related to racial discrimination during this meeting.

Because of his meeting with Tim and Andy, Mr. Sanner requested to meet with human resources, but he was told to meet with Mr. Harris instead. (*Id*. 83:23–84:1.) When Sanner met with Harris, he told Harris of his concerns with how Tim and Andy treated him and said if he had to get a lawyer "so be it." (*Id*. 84:1–85:6.) Again, Sanner does not claim that he made any allegations of racial discrimination to Mr. Harris. (*Id*. 118:22–119:2.)

Mr. Sanner then told other employees that he planned to sue Mr. Harris for possession of two Ziebart locations. (*Id*. 88:2–6.) Mr. Harris responded to this behavior by accusing Mr. Sanner of "running around like a bitch, complaining to everybody about everybody." (Recording, ECF No. 5.)

In July 2022, the situation came to a head. On July 8, Mr. Sanner left work at 5:00 to pick up his daughter, leaving a car in the shop to be tinted.[1] (Mot., Ex. D.)

---

[1] The parties dispute whether Mr. Sanner was normally allowed to leave at 5:00 or 5:30, but they agree that he did not tint a car that his manager (Andy) asked him to tint. Andy texted Sanner ten minutes after Sanner left asking what happened. Mr. Sanner responded that Andy "should have scheduled better." (Sanner Dep., 99:6–10.)

3

As a result, when Mr. Sanner returned to work on July 11, he was suspended for three days. (*Id.*) Before he left on July 11, Mr. Sanner attempted to send an email to Human Resources with the subject line "Human Resources discrimination calm (*sic*)." ("July 11 Email") (Mot., Ex. E.) The email stated, "I'm never fast enough or good enough and because of my skin color I'm always going to be the bad guy." (*Id.*) However, he sent it to the wrong email address, so the message was not sent to Mr. Harris until July 14 at 9:19 a.m.[2] (*Id.*)

When Mr. Sanner returned to work on July 14, he recorded an interaction with Andy and Mr. Harris. In the recording, Andy informs him that was suspended for five more days. (Recording, ECF No. 5.) Andy tells him that the three-day suspension was for leaving work without authorization, and the five-day suspension was for refusing to work on the car that was in the shop when he left. (*Id.*) In the recording, Mr. Harris warns Mr. Sanner not to "walk up on" him or Harris would "knock [Sanner's] ass out." (*Id.*) There is no evidence that Mr. Harris knew of the July 11 Email when this interaction began. The recording ends when Mr. Sanner used his phone to show Mr. Harris the July 11 Email. (*Id.*)

Also on July 14, someone drafted a final Employee Warning Notice ("July 14 Termination Notice"). (Mot., Ex. F.) That July 14 Notice states: "[Mr. Sanner] has made several false accusations against management staff about race and not having equal opportunity. He has also said we belittle him by simpley (*sic*) asking him to clean and take care of his area [and] tools all of which are false statements." (*Id.*) In

---

[2] Mr. Sanner claims Mr. Harris changed the HR email address but provides no evidence in support of this assertion.

4

the section titled "Action Taken," the Notice states "Termination." (*Id.*) It is unclear whether this Notice was provided to Mr. Sanner.

Following his five-day suspension, Mr. Sanner returned to work on July 21, 2022. He was terminated that day.

## II.  Procedural History

Mr. Sanner timely filed a charge of discrimination with the Equal Opportunity Employment Commission and received a right-to-sue letter. He originally filed this case in the Franklin County Court of Common Pleas asserting two claims for discrimination and retaliation under Title VII of the Civil Rights Act of 1964. Mr. Harris removed the case to federal court, and he now moves for summary judgment on both claims.

## III.  STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the burden of establishing there are no genuine issues of material fact, which may be achieved by demonstrating the nonmoving party lacks evidence to support an essential element of its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388–89 (6th Cir. 1993). The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting Fed. R. Civ. P. 56).

When evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

A genuine issue exists if the nonmoving party can present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339–40 (6th Cir. 1993). In other words, "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (concluding that summary judgment is appropriate when the evidence could not lead the trier of fact to find for the non-moving party).

These standards apply equally when the plaintiff is *pro se*.

IV. ANALYSIS

    A. **Mr. Sanner's discrimination claim fails.**

Mr. Harris argues that he is entitled to summary judgment because Mr. Sanner has failed to make out his *prima facie* case of racial discrimination. The Court agrees.

Under Title VII, it is unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ." 42 U.S.C. Sec. 2000e–2(a)(1). Mr. Sanner does not have direct evidence of discrimination, so, to survive summary judgment, he must establish a *prima facie* case by presenting circumstantial evidence that would support an inference of

6

discriminatory intent. *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572 (6th Cir. 2000).

Mr. Sanner establishes a *prima facie* case of discrimination by showing: 1) he is a member of a protected class; 2) he was qualified for the job; 3) he suffered an adverse employment action; and 4) he was replaced by a person outside the protected class or was treated less favorably than a similarly situated, non-protected individual. *Deleon v. Kalamazoo Cnty. Rd. Comm'n,* 739 F.3d 914, 918 (6th Cir. 2014).

It is undisputed that Mr. Sanner meets the first three elements of his *prima facie* case: he is bi-racial, was qualified for the job of window tinter, and he was terminated.[3] (Mot., PAGEID # 376; Sanner Dep., 114:1–4.) As to the fourth element, Mr. Sanner argues that he was treated less favorably than similarly situated individuals outside his protected class.

Mr. Sanner first attempts to compare himself with Jason, who he asserts is a Caucasian window tinter who passed out in cars, came in late without repercussions, and called off every Monday for one or two months. (Sanner Aff., ¶ 13; Sanner Dep., 66:17–22.) But Mr. Sanner has not provided any evidence other than his own unfounded assertions—he has not even provided Jason's last name. He has failed to create a genuine issue of material fact that Jason is a valid comparator.

---

[3] Mr. Sanner cites other adverse employment actions, but because he has not shown that he was treated less favorably than a similarly situated, non-protected individual, the Court need not address them.

7

Mr. Sanner also attempts to compare himself to other employees by claiming that they were all allowed to leave early without repercussion (Sanner Dep., 92:6), that his supervisor did not clean up his own workspace but was not punished (*id.* 46:10–23), and that no one else experienced similar tension or reprimands at work (*id.* 74:14–15). These arguments are too vague to allow analysis of whether any of the other employees are appropriate comparators.

Accordingly, Mr. Sanner has failed to establish his *prima facie* case and Mr. Harris's Motion for Summary Judgment on the Title VII Race Discrimination claim is **GRANTED**.

### B. Mr. Sanner's retaliation claim fails as to pretext.

Mr. Harris also argues that he is entitled to summary judgment on Mr. Sanner's retaliation claim because Mr. Sanner did not engage in a protected activity and cannot otherwise demonstrate that Mr. Harris's stated reasons for termination are pretextual.

Title VII prohibits employers from retaliating against employees because they have opposed an unlawful, discriminatory employment practice. 42 U.S.C. § 2000e–3(a). To make out a *prima facie* case for retaliation under Title VII, Mr. Sanner must show that: "1) he engaged in activity protected by Title VII; (2) his exercise of such protected activity was known by the defendant; (3) thereafter, the defendant took an action that was 'materially adverse' to the plaintiff; and (4) a causal connection existed between the protected activity and the materially adverse action." *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014). The burden to establish a *prima facie* case of retaliation is "not onerous" and "is a burden easily

8

met." *EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir. 1997) (citations omitted). Even so, the evidence presented must create a genuine issue of material fact as to whether unlawful retaliation was the but-for cause of Mr. Sanner's termination. *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013).

If Mr. Sanner establishes his *prima facie* case, then the burden shifts to Mr. Harris to provide a legitimate, non-retaliatory reason for Mr. Sanner's termination. *Goldblum v. Univ. of Cincinnati*, 62 F.4th 244, 251 (6th Cir. 2023). If Mr. Harris does so, the burden shifts back to Mr. Sanner to show that Mr. Harris's articulated reasons are a pretext for retaliation. *Id.*

### 1. Mr. Sanner has established a *prima facie* case for retaliation.

Mr. Harris disputes only the first element of Mr. Sanner's *prima facie* case and makes no mention of the remaining three elements. However, the Court will address each in turn.

#### a) Mr. Sanner engaged in a protected activity.

The requirement of protected activity does not restrict the manner or means by which an employee may oppose an unlawful employment practice, but vague charges of discrimination do not amount to a protected activity. *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1314 (6th Cir. 1989). A defendant employer is entitled to summary judgment on this element when the plaintiff employee's complaints fail to allege discrimination based on any protected class. *See id.*; *Willoughby v. Allstate Ins. Co.*, 104 F.App'x 528, 531 (6th Cir. 2004); *Fox v. Eagle Distrib. Co.*, 510 F.3d 587, 592 (6th Cir. 2007). Still, a complaint need not be made

9

with "absolute formality, clarity, or precision" to qualify for protection. *Stevens v. Saint Elizabeth Med. Ctr., Inc.*, 533 F.App'x. 624, 631 (6th Cir. 2013).

Mr. Sanner alleges that he engaged in protected activity three times: first in his June meeting with his managers, Tim and Andy; next in his meeting with Mr. Harris where he discussed the problems he was having with Tim and Andy; and finally in the July 11 Email.[4]

Starting with his meeting with Tim and Andy, Mr. Sanner alleges that he told the two men "how [he] was feeling and what was going on" (Sanner Dep., 79:16) but these complaints were about how they handled his paychecks and their "discriminatory" scrutiny and criticism of his work (*id.* 80:22–81:5). And, in his subsequent meeting with Mr. Harris, Mr. Sanner says that he "let [Harris] know my concerns about how Tim and Andy ha[d] been treating me." (*Id.* 84:1–5.) There is no evidence in the record that Sanner made any statements about racial discrimination in either meeting. Consequently, neither meeting amounts to protected activity.

However, in the July 11 Email, which Sanner captioned as a "Discrimination Calm (*sic*)" he stated, "I am never fast enough or good enough and because of my skin color I'm always going to be the bad guy." (Mot., Ex. E.) While Mr. Harris posits that this sentence is not "directly tied to [Mr. Sanner's] race" (Harris Aff., ¶ 12), Mr. Sanner is not obligated to use the word "race" to indicate that his complaint

---

[4] Mr. Sanner also alleges that his EEOC complaint amounts to protected activity. However, since his EEOC claim was not filed until after his termination from Ziebart, the Court does not analyze it.

10

alleges racial discrimination. Sanner's reference to his skin color as the basis for his differential treatment is protected activity.

### b) Mr. Sanner's exercise of protected activity was known to Mr. Harris.

Mr. Harris's receipt of the July 11 Email on July 14 satisfies the second element of Mr. Sanner's *prima facie* case: Mr. Sanner's protected activity was known to Mr. Harris.

### c) Mr. Harris terminated Mr. Sanner after he engaged in protected activity.

Mr. Sanner asserts that the three- and five-day suspensions were adverse actions made in retaliation for his "speaking out" at the June meetings with Andy, Tim, and Harris. However, these meetings were not protected activities, and the July 11 Email was not received until after Mr. Sanner was suspended.

Sanner's termination occurred after he engaged in protected activity.

### d) There was a causal connection between Mr. Sanner's protected activity and his termination.

The July 14 Termination Notice establishes a causal connection between Mr. Sanner's protected activity and his termination. (*See* Mot., Ex. F.) The Notice explicitly references Sanner's complaints about racial discrimination as the reason for his termination. Moreover, the timing of his termination on the heels of his protected activity establishes a connection between the two. *Yazdian v. ConMed Endoscopic Techs., Inc.*, 793 F.3d 634, 650 (6th Cir. 2015) (finding that temporal proximity between protected activity and the adverse employment action can establish a causal relationship).

11

### 2. Mr. Harris has provided a legitimate, non-discriminatory reason for termination.

Mr. Harris asserts that Mr. Sanner was terminated "due to the recent, multiple disciplinary actions including throwing his tool and creating a hostile work environment, walking off the job, and insubordination." (Harris Aff., ¶ 17.) He does not claim that these are multiple, independent reasons for Mr. Sanner's termination; rather, Mr. Sanner was terminated for all these reasons in combination. This is a legitimate reason for Sanner's termination.

### 3. Mr. Sanner has not established pretext.

To demonstrate pretext, Mr. Sanner must show that the stated reason for his termination, taken as a whole, either 1) had no basis in fact 2) did not actually motivate Mr. Harris to terminate him or 3) was insufficient to motivate Mr. Harris to terminate him. *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009). Using one or more of these rationales, Mr. Sanner must "produce sufficient evidence from which a jury may reasonably reject [Mr. Harris's] explanation." *Warfield v. Lebanon Corr. Inst.*, 181 F.3d 723, 730 (6th Cir. 1999).

Mr. Sanner argues that the stated reasons did not actually motivate the decision to terminate him. (Sanner Dep., 126:2–7.) This method of proving pretext requires Mr. Sanner to establish that the weight of the evidence makes it more likely than not that the defendant's legitimate, non-retaliatory reason for its action is a pretext for retaliation. *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994) (overruled on other grounds). He "may not rely simply

12

upon his *prima facie* evidence but must . . . introduce additional evidence" of retaliation. *Id.*

Here, Mr. Sanner offers a recording of an argument between himself and Mr. Harris and posits that the proximity between his protected activity and his termination suggest pretext. (*See* Sanner Dep., 126:1–127:22; Mot., Ex. E; Harris Aff. ¶ 17.)

The recording casts doubt on Mr. Harris's stated reasons for suspending Mr. Sanner,[5] but it does little to demonstrate that Harris's stated reasons for termination are a pretextual. The recording highlights a fact undisputed by the parties: the relationship between Sanner and Harris had been deteriorating. In the recording, Mr. Harris states that he does not know "what's been going on" with Sanner in the last year of employment and exclaims, "you're making 30 dollars and hour now and we ain't good enough—you don't like anybody!" (Recording, ECF No. 5.) Mr. Sanner's race is never mentioned or alluded to.

Turning to the timing of Sanner's termination, while the decision to terminate Mr. Sanner came shortly after the receipt of the July 11 Email (*see* Mot., Ex. E; Mot., Ex. F; Harris Aff., ¶ 17), it was also made shortly after an explosive argument between Harris and Sanner and following a lengthy and undisputed period of degenerating respect between the parties.

---

[5] Mr. Harris asserts that he suspended Mr. Sanner "as a result" of the confrontation, but the confrontation does not begin until after Sanner was informed of the five-day suspension.

13

A reasonable jury could not conclude that the weight of the evidence makes Mr. Harris's stated reasons for termination more likely than not a pretext for unlawful retaliation.

## V. CONCLUSION

For the foregoing reasons, Mr. Harris's Motion for Summary Judgment is **GRANTED.**

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**CHIEF UNITED STATES DISTRICT JUDGE**